**UNITED STATES of America, Appellee,**

v.

**KWANG FU PENG, a/k/a "K.F. Peng," Defendant-Appellant.**

**No. 1262, Docket 85–1054.**

United States Court of Appeals, Second Circuit.

Argued June 5, 1985.

Decided June 26, 1985.

Robert Polstein, New York City (Polstein, Ferrara & Campriello, Austin V. Campriello, Anthony J. Ferrara, New York City, of counsel), for defendant-appellant.

Martin J. Auerbach, Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Stuart E. Abrams, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, MESKILL and NEWMAN, Circuit Judges.

FEINBERG, Chief Judge.

Kwang Fu Peng appeals from an order of the United States District Court for the Southern District of New York, David N. Edelstein, J., denying his motion to dismiss an indictment because it subjected him to double jeopardy. Appellant's first trial ended in a mistrial, declared sua sponte by Judge Edelstein after the judge disqualified appellant's counsel from continuing in the case. 602 F.Supp. 298. For reasons stated below, we affirm the order of the district court.

## I.

Appellant Peng was arrested in July 1984 on a complaint charging him with interstate transportation of property obtained by theft, conversion or fraud in violation of 18 U.S.C. § 2314. Shortly thereafter, an indictment on this count was returned. It was soon superseded by an indictment that added a count of wire fraud, 18 U.S.C. § 1343. Both of these counts arise out of the same series of transactions, the characterization of which is very much in dispute. The government has alleged that appellant defrauded certain businessmen, including one Geoffrey Harrison Galley, by holding himself out as the representative of a Far Eastern government interested in selling 400 metric tons of gold. Appellant, the government contends, was thereby able to persuade his victims to advance him $200,000 to pay for certain "expenses," a sum that appellant proceeded to convert to his own use. Appellant has at all times maintained that the

$200,000 was a non-refundable commission, his to keep even though the proposed deal was never consummated.

Immediately after his arrest, appellant retained Anthony J. Ferrara, Esq., as his counsel. Ferrara continued in this capacity through appellant's trial, which began on January 29, 1985. In his opening, Ferrara argued what appears to have been the theme of his client's defense: "[W]hat this case is all about is an attempt by Geoffrey Harrison Galley, a multi-millionaire from England, to get out of a bad business deal." In support of this characterization, Ferrara noted that even after Peng's arrest, Galley "continued to negotiate in an attempt to resurrect this transaction."

Galley was the first witness called by the government. It is undisputed that at no time during his direct examination was Galley asked for, nor did he give, any testimony relating to post-arrest contacts with Peng or his attorney. During cross-examination, in support of the defense's theory, Ferrara sought to elicit testimony from Galley regarding such post-arrest negotiations. After Ferrara made reference to Peter Skourlis—who, appellant alleges, was Galley's agent in New York—the following exchange took place:

FERRARA: You did talk to Mr. Skourlis about this gold transaction, correct?

GALLEY: No.

FERRARA: You did not talk to him about the gold transaction?

GALLEY: I don't believe an answer yes or no is adequate for the question.

FERRARA: Did you talk to Mr. Skourlis?

THE COURT: Please give the answer you believe is adequate.

GALLEY: Mr. Skourlis approached me and said, "Do you, sir, wish to meet with me," because there was a terrible misunderstanding. Mr. Peng had all the money and had not in fact, touched the money, and he could prove that all the statements that he had made concerning the availability of the gold

were true, and so I came to meet you at your office.

FERRARA: I move to strike the response, Judge.

THE COURT: Denied.

FERRARA: Did you offer to discontinue this proceeding, this criminal proceeding, if the money was returned to you?

GALLEY: You said to me—

FERRARA: Answer the question.

GALLEY: No I did not offer to discontinue because it is not my proceeding.

Shortly thereafter, Ferrara focused upon the meeting in his office to which Galley had just alluded:

FERRARA: Did the meeting that we had in my office, did it end with a demand being made upon you for an additional two-hundred-thousand-dollars' payment?

GALLEY: It ended with a threat with [sic] you.

FERRARA: Did it end with a demand?

GALLEY: No, it did not end with a demand; it was a threat.

FERRARA: You would be sued for an additional $200,000?

GALLEY: I would lose another $200,000.

FERRARA: That you owed Mr. Peng an additional $200,000?

GALLEY: Yes.

FERRARA: In accord with your understanding?

GALLEY: It was a threat.

FERRARA: Yes or no?

GALLEY: The exact words—

Here the district judge intervened and, over Ferrara's objections, questioned Ferrara as to the date of the meeting in question. Ferrara placed it in July 1984. The judge then asked Galley to describe the circumstances under which the meeting had taken place. When Ferrara again objected to this line of questioning, the judge asserted: "You opened the door, and the jury is entitled to know all the facts. That is my ruling." At this point, Ferrara moved for a mistrial. The motion was immediately denied, whereupon Ferrara inquired: "Will the court allow me to testify in this proceedings [sic] concerning what happened at the conference?" The judge responded that Ferrara would be permitted to do so only if substitute counsel were retained. The court granted the defense an adjournment to allow this substitution, and the jury was dismissed for the day.

The next day, with the jury absent, the court raised the issue whether Ferrara's disqualification was required by DR 5–102 of the Code of Professional Responsibility, which states that a lawyer "shall" withdraw if he "learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client." N.Y. Jud.L. (app) Code of Professional Responsibility DR 5–102(A) (McKinney 1975). Ferrara announced that, at his client's behest, he wished to continue as counsel and that, if necessary, another lawyer in his firm who had also attended the meeting could take the stand to rebut Galley's testimony. The court heard argument on both the disqualification issue and the question of whether a mistrial would be necessary if Ferrara were to be disqualified. On the latter question, defense counsel asserted that his prior mistrial motion was withdrawn; while the government did not itself make such a motion, the prosecutor noted the court's option of declaring a mistrial *sua sponte.*

On February 4, again outside the jury's presence, Ferrara proposed a number of alternatives to a mistrial. He volunteered to preview his summation with respect to the July meeting, and suggested that Galley's testimony on this point might be stricken from the record, cautionary instructions given, and the jurors interviewed—all in an attempt to ensure that his own credibility would not become an issue in the case. The court, however, found itself bound by *United States v. Cunningham,* 672 F.2d 1064 (2d Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984), to disqualify Ferrara. It also concluded that, under these circumstances, there was a "manifest necessity" to declare a mistrial.

In an opinion and order issued a few days later, Judge Edelstein set out in greater detail the basis for his decision. He found that Ferrara had been placed "in the position of a participant in one of the contested events relating to the alleged fraud." "Thus, even if someone other than Ferrara testifies as to the conversation [with Galley], Ferrara would still be placed before the jury in the dual roles of both advocate and unsworn witness, with personal knowledge of disputed facts." The court went on to note that Ferrara's disqualification would not work the "substantial hardship" on Peng that might justify Ferrara's continuation as counsel. It therefore concluded that "the 'taint' of the trial that would occur if counsel were to remain outweighs the defendant's sixth amendment interest in choice of counsel." On the need for a mistrial, the court relied on two grounds to support a finding of "manifest necessity." "Foremost is the effect on the weight the jury will give to Ferrara's opening statement and examination of Galley once Ferrara is substituted and he or a member of his firm takes the stand." The court also found that the time substitute counsel would need to prepare required declaration of a mistrial.

Soon after the district court issued its order, appellant moved on double jeopardy grounds for the dismissal of the indictment against him. Upon denial of the motion, Peng filed this appeal.

## II.

■ The government argues that because appellant initially moved for a mistrial he should be precluded from asserting a double jeopardy bar to his further prosecution. *See United States v. Dinitz*, 424 U.S. 600, 607–08, 96 S.Ct. 1075, 1079–80, 47 L.Ed.2d 267 (1976); *United States v. Goldstein*, 479 F.2d 1061, 1066–67 (2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973). The record, however, indicates that appellant's motion, never renewed after its denial, was expressly withdrawn on February 1. *See United States v. Mastrangelo*, 662 F.2d 946, 950 (2d Cir.

1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982). The court here plainly declared the mistrial *sua sponte*, although the order was entered with at least the acquiescence of the government. In assessing appellant's double jeopardy claim, we must therefore apply the "manifest necessity" standard first enunciated by Justice Story in *United States v. Perez*, 9 Wheat. 579, 580, 6 L.Ed. 165 (1824). *See Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982).

■ As the court noted in *Kennedy:* "The 'manifest necessity' standard provides sufficient protection to the defendant's interests in having his case finally decided by the jury first selected while at the same time maintaining 'the public's interest in fair trials designed to end in just judgments.'" 456 U.S. at 672, 102 S.Ct. at 2087 (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949)). Under this standard, the prosecution bears the "heavy" burden of showing a mistrial to have been demanded by a "high degree" of necessity. *Arizona v. Washington*, 434 U.S. 497, 505–06, 98 S.Ct. 824, 830–31, 54 L.Ed.2d 717 (1978).

Turning to the question whether such a necessity existed in this case, we are told by the government that the propriety of Ferrara's disqualification need not be addressed at this point in the proceedings against appellant. Indeed, *Abney v. United States*, 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977), while holding that an order refusing to dismiss an indictment on double jeopardy grounds is appealable, counsels against the exercise of pendent appellate jurisdiction over otherwise non-appealable claims joined to the double jeopardy claim. And, under *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), pretrial disqualifications of criminal defense counsel may be reviewed only after completion of trial court proceedings. In this case, however, appellant's sixth amendment claim is not so easily separated from his double jeopardy claim. Where a mistrial

has been declared based upon "manifest necessity," "[i]t is not enough that plausible reasons might conceivably exist for the trial judge's action. If we are to review his exercise of discretion, to which deference should ordinarily be accorded, we must know the basis for that decision as 'disclosed by the record'...." *Dunkerley v. Hogan,* 579 F.2d 141, 146 (2d Cir.1978) (quoting *Washington, supra,* 434 U.S. at 517, 98 S.Ct. at 836), *cert. denied,* 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). The district court here found the necessity for a mistrial to lie in the effect upon the jury of Ferrara's withdrawal from the case and in the need of substitute counsel for time to prepare properly. If the court's disqualification of Ferrara was improper, these reasons could not support a finding of "manifest necessity." We do not mean to imply that determination of whether circumstances confronting a trial judge constitute "manifest necessity" for a mistrial always requires assessing the correctness of the ruling that precipitates such circumstances. But, in this case, the circumstances are so interrelated that, even in the wake of *Flanagan, supra,* we believe it necessary to examine the basis for the disqualification order.

In arguing that the disqualification of Ferrara was improper, appellant suggests that the exchanges leading to the order could have been avoided if the court had permitted Ferrara to skirt matters he would otherwise not have raised in his cross-examination of Galley. We read the record differently. The first disclosure by Galley of his post-arrest contact with Ferrara came at the instance of Ferrara, not Judge Edelstein. Moreover, that testimony referred only to a meeting at Ferrara's office but not to the substance of it. Although Ferrara sought to strike Galley's response at that point and was overruled, he soon returned to the subject of the July meeting and elicited testimony about the "threat" he allegedly had made to Galley.

Moreover, the question of who opened the door to testimony about the July meeting is not as important to our analysis as the consequences of that testimony. As the district court noted, the exchanges between Ferrara and Galley plainly showed Ferrara to be a participant in an event relating to the alleged fraud. The dispute between witness and cross-examiner as to whether the July meeting had ended with a "demand" or with a "threat" suggests that the two had very different recollections of the meeting, or at least might have led the jury to think such to be the case. Indeed, even if no such dispute had arisen, the district court would have been justified in fearing that Ferrara's credibility had been irreversibly injected as an issue in the trial.

If Ferrara had continued as counsel without taking the stand, the jury might well have interpreted his questions or summation as testimony conveying his own version of the July meeting. This is precisely the situation we condemned in *Cunningham, supra,* where we observed:

> Since as an unsworn witness [defense counsel] would not be subject to cross-examination or explicit impeachment, the interest sought to be protected by the Disciplinary Rules would be even more seriously eroded than if [defense counsel] appeared as a sworn witness.

672 F.2d at 1075; *see United States v. McKeon,* 738 F.2d 26, 34–35 (2d Cir.1984). Ferrara's suggestion that if necessary, he could call another lawyer in his firm to give an account of the July meeting thus could not resolve the conflict between his role as advocate and his status as a participant in a disputed transaction.[1] Of course, if Fer-

---

1. We note that under Rule 3.7(b) of the American Bar Association's new Model Rules of Professional Conduct, a lawyer may call another lawyer from his firm as a witness while himself continuing as counsel. However, such a course is barred by the Code of Professional Responsibility, which has been adopted in New York State and has frequently provided "guidance for the courts in determining whether a case would be tainted by the participation of an attorney or a firm," *Armstrong v. McAlpin,* 625 F.2d 433, 446 n. 26 (2d Cir.1980) (in banc), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). In any event, we do not believe that Rule 3.7(b) was intended to sanction situations in which the examining lawyer

rara were to take the stand to rebut Galley's testimony explicitly, he would face certain disqualification pursuant to DR 5–102(A). *See Cunningham, supra,* 672 F.2d at 1074.

■ We therefore believe that the district court was justified in finding that DR 5–102(A) as interpreted in *Cunningham, supra,* required Ferrara's disqualification. Similarly, we cannot fault the court for concluding that the exceptions to DR 5–102(A) enumerated in DR 5–101(B) should not be applied here.[2] The matter in which Ferrara's credibility was implicated was not of merely tangential importance to the trial. Ferrara asserted in the district court that when, in his opening, he referred to attempts by Galley to resurrect the gold deal, he intended no allusion to the July meeting in which he was a participant. Even assuming that to be true, however, Ferrara's intentions cannot be dispositive here. The jury might easily have considered the July meeting to be one of those post-arrest contacts between appellant, Galley and their respective agents that the defense found so important to its theory that Galley was trying to use the criminal process for a civil recovery. On the question whether Ferrara's disqualification will work a "substantial hardship" on appellant, we find no reason to disturb the district court's finding that Ferrara lacks a "distinctive value" here. If the costs of retaining substitute counsel were, without more, deemed to constitute "substantial hardship" under DR 5–101(B)(4), the exception would swallow the rule.

Appellant also argues that "a defense attorney has an affirmative duty to investigate the circumstances of the case and the same right to interview prospective [hostile] witnesses" that the prosecution is permitted to enjoy. Appellant claims that the July meeting constituted such an interview of Galley by Ferrara, and that the disqualification of Ferrara on this account will discourage defense counsel from interviewing witnesses before trial. We believe that the record adequately supports the district court's conclusion that the July meeting was "more than a witness interview."

Under the circumstances, we do not believe that the district court abused its discretion when it found the taint that Ferrara's continued representation of appellant would inject into any further proceedings outweighed appellant's Sixth Amendment interest in having counsel of his choice. *See Cunningham, supra,* 672 F.2d at 1070. Judge Edelstein made his decision only after carefully considering the alternatives to disqualification, and his fear that the jury would be unacceptably affected by Ferrara's double role as counsel and unsworn witness is quite understandable.

■ Having concluded that the district court's disqualification of Ferrara was an appropriate exercise of its discretion, we cannot say that the court's declaration of a mistrial as a consequence of that order was improper. Judge Edelstein's finding of "manifest necessity" was in large part based upon his evaluation of the likely effect upon the jury of Ferrara's disqualification. This evaluation is entitled to considerable deference, and we find no reason to challenge it. *See Washington, supra,* 434 U.S. at 513–14, 98 S.Ct. at 834–35; *United States v. Grasso,* 600 F.2d 342, 343 (2d Cir.1979). Indeed, appellant's counsel con-

---

would in effect be testifying as an unsworn witness.

**2.** DR 5–101(B) provides:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

ceded in this court that if the disqualification order was proper, the district court's decision to declare a mistrial cannot be overturned. We also note that appellant has failed to demonstrate specific prejudice from the mistrial ruling "other than the harm which always accompanies retrial." *Washington, supra,* 434 U.S. at 516 n. 35, 98 S.Ct. at 835 n. 35.

We therefore hold that since the district court's declaration of a mistrial was an exercise of its "sound discretion," *id.* at 514, 98 S.Ct. at 835, the order was supported by the "high degree" of necessity required before appellant may be deprived of his " 'valued right' to have his trial concluded before the first jury impaneled." *Id.* at 516, 98 S.Ct. at 836 (quoting *Wade, supra,* 336 U.S. at 689, 69 S.Ct. at 837).

The judgment of the district court is affirmed.