UNITED STATES, Appellee,

v.

Jonathan FULLER,
Defendant, Appellant.

No. 90–1299.

United States Court of Appeals,
First Circuit.

Heard Feb. 4, 1991.

Decided June 20, 1991.

Sharon L. Beckman, by appointment of the Court, with whom Silverglate & Good was on brief, Boston, Mass., for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., with whom Richard S. Cohen, U.S. Atty., Augusta, Me., and James L. McCarthy, Asst. U.S. Atty., were on brief, Bangor, Me., for appellee.

Before BREYER, Chief Judge,
BOWNES, Senior Circuit Judge, and
SELYA, Circuit Judge.

BREYER, Chief Judge.

Jonathan Fuller appeals from a 95 month prison sentence for possessing LSD with intent to distribute it. The Supreme Court recently considered and rejected Fuller's first appellate claim—namely that the sentencing court must calculate Fuller's Guideline sentence on the basis of the weight of the chemical LSD alone, not the weight of the LSD *plus* the blotter paper carrier-medium. *See Chapman v. United States*, —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). We believe that *Chapman* controls this case.

Fuller makes a second argument based on a colloquy between the court and his counsel at the time of sentencing. *See* Appendix. Fuller had asked the court to order a psychological examination prior to sentencing. Counsel concluded that Fuller was "competent," but said that his current "mental condition may play a role in what sentence [the court chooses] to give the young man." The court said it would "recommend he be sent to an institution" where "psychological evaluation" would be done, but it did not want to delay the imposition of sentence. The court then asked counsel, "Do you have any real belief that he's significantly affected by this?" Counsel replied, "Well, this is something he's asked me to do, your honor." The court responded "No, you tell me what you think. They love to have me do everything that's possibly available to them."

Fuller argues that the law prohibited the court from asking these two questions. He recognizes a lawyer's obligation to be honest with the court and not to subscribe to facts or arguments that he knows are false, *see* Fed.R.Civ.P. 11, and, as an officer of the court to "help that system function properly to achieve the just resolution of controversies." *Unanue–Casal v. Unanue–Casal*, 898 F.2d 839, 842 (1st Cir. 1990). But, a lawyer, of course, also has a duty to represent his client. *Id.* And, by

asking for the lawyer's *personal* opinion of the merits of his client's claim, Fuller says, the court went beyond its right to demand veracity, and created a conflict between counsel and client. Fuller says that the questions amount to making his lawyer a witness against him, an action that the law normally would forbid.

While we can understand Fuller's concerns about the questions, the context of the questions and counsel's response to them convince us that there was no legal error. Fuller was not asserting a legal claim or defense, but rather requesting the judge to exercise his discretionary power to order a psychological examination, arguing that the examination would help the judge in sentencing. *See* 18 U.S.C. § 3552(c) (district court may order psychological examination if it "desires more information than is otherwise available"). And more importantly, as we have set out fully in the Appendix, counsel responded to the questions as if they were a fairly ordinary request for an honest presentation of the factors for and against ordering a psychological examination, and which counsel simply related without further comment. There was no effort to examine counsel in any evidentiary way, or even to suggest any such examination. *See United States v. Diozzi*, 807 F.2d 10, 12–13 (1st Cir.1986) ("attorneys could not serve the dual roles of defense counsel and sworn government witnesses in the same trial"); *United States v. Kwang Fu Peng*, 766 F.2d 82, 86 (2d Cir.1985) (attorney properly disqualified where he would be a witness to "a disputed transaction"); *United States v. Cortelles-so*, 663 F.2d 361, 363 (1st Cir.1981) (lawyer must be disqualified when "grand jury record ... showed that he would testify against his client on an issue fundamental to his client's case").

The judgment of the district court is

*Affirmed.*

### APPENDIX

Mr. Palmer: ... Your Honor, I neglected to mention this before. I have a motion for psychological examination of [Fuller]. He's got a long history of psychological problems. In fact, he dove head-first some years ago out of the Kennebec County Courthouse. And I think—there hasn't been, so far as I know, a recent psychological examination of this individual. It's my belief that such an exam might assist the court in preparing the sentence.

The Court: What I would be prepared to do is sentence him and recommend he be sent to an institution for psychological evaluation to be done. But if he's pleaded guilty at this point and is before me for sentence, I think I'm in a position to assume that he's competent.

Mr. Palmer: I'm not saying that he isn't competent. I guess my suggestion is that his mental condition may play a role in what sentence you choose to give the young man.

The Court: If I do that, it's going to take another 90 days before we can sentence him. He's going to lose the time. Ultimately, he'd get credit for it, I guess. Do you have any real belief that he's significantly affected by this?

Mr. Palmer: Well, this is something he's asked me to do, your honor.

The Court: No, you tell me what you think. They love to have me do everything that's possibly available to them.... And it's a waste of government resources in 90% of these cases, and I'm leery about going too quickly because there are some cases where it may be warranted. But if ... there's no medical basis for it, and you don't believe that he is suffering from any particular mental problem, I don't see any sense in going through the drill.

Mr. Palmer: Well, I haven't had any difficulty dealing with the individual. He seems to comprehend everything I tell him and he seems to be logical and rational. He mentioned to me the fact that he was consuming a lot of this LSD at the time, and he has some history of some mental difficulties. He asked me to see if I could accomplish a psychological exam with him since it's been such a long time. At one point, I understand, while he was out in California, he became

disoriented and he had to get a ticket back. Now, I've discussed—

The Court: What do you mean he had to get a ticket back?

Mr. Palmer: I'm sorry, his mother had to send him out a bus ticket to get him back, and he had a hard time getting back because he was disoriented. I've discussed with him the possibility of understanding whether he was competent and all of that, and we resolved that in favor of entering the plea.

The Court: He was examined, according to paragraph 74 of the report, on December 10, 1983; evaluated again in 1984 at the age of 13. Doesn't seem to be any showing of any psychiatric problems. He's taken too many drugs. That seems to be where the problem is.

The Court: Well, I will endorse that motion denied, and I'll sentence this fellow with a recommendation that he be put in a facility that can extend to him a full psychological work-up.