# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00076-CR

**Candelario Cerda, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-10-0912, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Candelario Cerda, Jr. guilty of five counts of sexual assault. The trial court sentenced him to ten years in prison on the first three counts, suspended, and ten years in prison on counts four and five to be served consecutively. Appellant contends that the trial court committed fundamental error in failing to declare a mistrial when the victim accused appellant's trial counsel of encouraging her to lie. We will affirm the judgment.

Appellant was a music director at a church run by his family. A girl who attended the church testified that, when she was fourteen years old, she and the then-twenty-four-year-old appellant had sex more than a hundred times in a six-month period in motel rooms, his truck, and other locations. The record includes appellant's bills from a motel where the victim claimed they had sex. It also includes testimony from a San Marcos police officer that he found the victim with appellant in appellant's truck parked by a city park at 2:26 a.m.; the officer testified that the truck

was "rocking" when he approached and that appellant told him the victim was eighteen years old though the victim said she was fourteen. There was also video and testimony about another incident in which Texas State University police detained appellant for evading arrest when he drove away from them in a university parking garage; the victim testified that the police interrupted them as they were about to have sex, that appellant drove away, and that she jumped out of the moving vehicle before police stopped appellant's truck. Text messages recovered from her phone included texts from the defendant's phone describing his love for her. The victim testified that appellant asked her parents if they could date, but her father did not approve because of the age difference.

During the victim's direct examination by the State regarding her interview by appellant's trial counsel, the victim testified that appellant's counsel wanted her to lie. During a bench conference, appellant's trial counsel asserted that the testimony would cause the jury to believe that he was involved in criminal witness tampering. He did not plainly assert and obtain a ruling on any specific objection to the testimony—he opined at one point that relevance might be a ground for objection—and did not request a mistrial. During cross-examination, the victim testified that before appellant's trial counsel began recording their meeting he instructed her to tell the truth during trial, but indicated that he used "air quotes" when doing so.[1] In response, appellant's trial counsel's investigator and appellant's sister[2] testified that they did not hear or see appellant's attorney instruct the victim to lie. Appellant's counsel did not testify, no one tried to call him as a

---

[1] The reporter transcribed the victim's testimony as follows: "You—well, you didn't say to lie-lie. You said, Say the truth, and you did—did with your hands, your fingers like that (indicating)." In its brief, the State characterized the indication as "air quotes," and appellant did not reply to challenge that characterization.

[2] Appellant's sister drove the victim to the meeting at appellant's trial counsel's office.

2

witness, no one sought to disqualify him as counsel because he might be called as a witness, and no one moved for mistrial on this basis.

A mistrial is appropriate only in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether a mistrial is required depends on the particular facts of the case. *Id.* A trial court should grant a mistrial "only when residual prejudice remains" after less drastic alternatives are explored. *Id*. at 884-85. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004); *Juarez v. State*, 409 S.W.3d 156, 166 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Under this standard, we view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling, and uphold the ruling if it falls within the zone of reasonable disagreement. *Ocon*, 284 S.W.3d at 884. In determining whether a prejudicial event was so harmful as to warrant a mistrial, we consider the prejudicial effect of the complained of misconduct, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The range of discretion means that the same record could support affirmance of opposite decisions by different trial courts.

Because no motion for mistrial was made, we can reverse the judgment only if the failure to grant a mistrial sua sponte created a fundamental error such as a deprivation of systemic rights or rights that must be affirmatively waived. *See* Tex. R. App. P. 33.1; *see also Mendez v. State*, 138 S.W.3d 334, 340-41 (Tex. Crim. App. 2004). Systemic rights include the requirement that the court have personal and subject-matter jurisdiction and that the penal statute comply with

3

the constitution's separation of powers section. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003). Rights that must be affirmatively waived include the right to the assistance of counsel, a trial by jury, and the statutorily decreed pre-trial preparation time for appointed counsel. *Id.* These two categories of rights can be raised for the first time on appeal. *Id.*

Appellant has not articulated a right that he was denied that fits within these categories. There is no hint of lack of jurisdiction by the trial court or a constitutional problem with any relevant portion of the penal code. *See Aldrich*, 104 S.W.3d at 895. Appellant mentions that the State should have moved to disqualify defense counsel before trial, but it is not clear how the State's failure to move to disqualify appellant's counsel shows an error by the trial court. Appellant relies on cases concerning defense counsel who was or might have been called to testify, but none of those cases controls the situation here. *See Gonzalez v. State*, 117 S.W.3d 831, 840 (Tex. Crim. App. 2003); *see also United States v. Peng*, 766 F.2d 82, 84-87 (2nd Cir. 1985); *Densmore v. State*, No. 05-91-00937-CR, 1992 WL 86653 (Tex. App.—Dallas Apr. 22, 1992, no pet.).

In *Gonzalez*, the trial court granted the State's pretrial motion to disqualify defense counsel whom the State intended to call as a witness regarding allegations that the defendant tried, through or in the presence of his attorney, to bribe the State's key witness. *Gonzalez*, 117 S.W.3d at 835. Gonzalez contended unsuccessfully on appeal that the trial court thereby improperly denied him the right to counsel of his choice. *Id.* at 836. Our case is critically distinct in both trial court procedural facts and appellate court issue. Failure to declare a mistrial was not the central issue on appeal in *Gonzalez*, and in our case there was no motion to disqualify made or granted and defense counsel was not called to testify. The questions presented differ (disqualifying counsel

4

versus mistrial), the presentation of the issue at trial differs (pretrial motion versus no motion), and the discretion exercised differs (motion to disqualify granted versus inaction).[3] These distinctions render *Gonzalez* inapplicable to this case.

The *Peng* case is similarly unhelpful to appellant. In that case, the complaining witness testified that defense counsel participated in part of the fraud for which the defendant was on trial. 766 F.2d at 84-87. Because trial counsel or someone from his office would likely have had to testify regarding one of the contested issues in the fraud being tried, the trial court disqualified defense counsel and declared a mistrial. *Id.* at 84-85. The Second Circuit opined that, even if someone else from his office testified, the attorney would still be before the jury as advocate and unsworn witness with personal knowledge of disputed facts. *Id.* at 85. The court declared that the taint of the trial that would occur if counsel remained outweighed the defendant's right to counsel of choice. *Id.* The court held that, because the attorney's credibility was implicated on a matter that was "not of merely tangential importance to the trial," the trial court did not abuse its discretion in disqualifying defense counsel. *Id.* at 87. Here, by contrast, the matter on which defense counsel might have been called as a witness was not an element of the crime being tried. Also important under our standard of review is the fact that the trial court in our case, to the extent it exercised discretion in failing to sua sponte disqualify defense counsel, did so in the opposite way from the court in *Peng*. Because of the trial court's discretion, the appellate court's affirmance of the grant of a mistrial does not necessarily require the reversal of a failure to grant a mistrial sua sponte

---

[3] We also note that appellant was not required to keep his counsel. If appellant's counsel was too compromised to continue effectively and ethically, appellant could have sought to have his counsel removed and his counsel could have sought to withdraw. Neither occurred.

5

even on the same facts.  These critical differences limit the applicability of the reasoning in *Peng* to this case.

Our case is similarly crucially distinct from the facts of *Densmore.  See* 1992 WL 86653 at *1-2.  In that case concerning criminal failure to pay child support, the State called defense counsel to show that the defendant had the funds to pay child support.  *Id.*  The court of appeals held that the trial court erred by not declaring a mistrial because defense counsel's testimony centered on the essential element of the offense charged, and the process cast doubt and distrust on defense counsel's credibility.  *Id.* at *3.  Although appellant's counsel in this case did call his investigator to the stand, his testimony related to the tangential issue of whether appellant's counsel encouraged the victim to lie but not the central issue of whether appellant committed the offenses against the victim.  Also, the investigator here testified in favor of defense counsel's integrity, in contrast to the testimony in *Densmore* that impugned defense counsel's credibility.  *See id*. at *3.

Appellant did not preserve error and has not shown fundamental error.  Applying the *Hawkins* test, 135 S.W.3d at 77, we conclude that while the victim's initial accusation may have had some prejudicial effect, appellant was able to blunt that through cross-examination and the testimony of his investigator and appellant's sister.  More important, though, is the certainty of conviction from the victim's extensive and graphic testimony about the sexual assaults combined with corroborating evidence such as the motel receipts, the encounters with police, and the text messages.  Appellant points to some evidence that he asserts casts doubt on her testimony, such as the absence of semen stains from appellant in his truck (allegedly the site of many sexual encounters) as well as evidence that she was experiencing hallucinations around the time of these offenses and that she reported that

6

she had previously seen her father levitate under the effect of demonic possession.  Nevertheless, our review of the entire record reveals no abuse of discretion in the trial court's failure to grant a mistrial sua sponte when the victim accused appellant's trial counsel of encouraging her to lie.

We affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   August 7, 2015

Do Not Publish

7