20-1468-cr
*United States v. Lewis*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand twenty-one.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> RICHARD C. WESLEY,
> SUSAN L. CARNEY,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.                                                          20-1468-cr

LAWRENCE LEWIS, a/k/a L Boogs,

> *Defendant-Appellant.*

---

For Defendant-Appellant:        Peter E. Brill, Brill Legal Group, P.C., New York, NY

For Appellee:                   Amy Busa, Christopher C. Caffarone, and Mark E. Misorek, Assistant United States Attorneys, *for* Mark J. Lesko, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY

1

Appeal from an order of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Defendant-Appellant Lawrence Lewis ("Lewis") appeals from an April 24, 2020 order of the United States District Court for the Eastern District of New York (Seybert, *J.*) denying his motion to dismiss the superseding indictment on double jeopardy grounds. The sixteen-count superseding indictment charges Lewis with, *inter alia*, racketeering, murder in aid of racketeering, conspiracy to tamper with witnesses, and witness tampering. On November 25, 2019, the district court declared a mistrial over Lewis's objection after concluding that Lewis's counsel, Christopher Cassar ("Cassar"), presented a *per se* unwaivable conflict of interest requiring his disqualification. On appeal, Lewis argues that the Double Jeopardy Clause of the Fifth Amendment precludes a second trial because the district court abused its discretion in disqualifying Cassar and, therefore, in determining that there was a manifest necessity to declare a mistrial. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**A. Disqualification of Counsel**

The district court disqualified Cassar during Lewis's trial because it concluded that Cassar's conduct in attempting to influence a government witness, Shana "Nikki" Dennis-Hamil ("Hamil"), had resulted in a *per se* unwaivable conflict of interest. In reviewing this determination, "[w]e accord the district court's decision to disqualify an attorney 'substantial latitude,' and review . . . only for an abuse of discretion." *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993) (quoting *Wheat v. United States*, 486 U.S. 153, 163 (1988)). The right to counsel under the Sixth Amendment encompasses "a correlative right to representation that is free

2

from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). We have accordingly recognized that a district court must undertake several core duties when it "learns of even the possibility of a conflict of interest." *See United States v. Lussier*, 71 F.3d 456, 461–62 (2d Cir. 1995).

At the start, the district court "must inquire into the details of the attorney's interests to determine whether the conflict is actual, potential, or nonexistent." *Id.* at 461. If the district court concludes that a conflict exists, it must next determine whether the defendant may waive the conflict. *See id.* If, on the one hand, the conflict is waivable, the district court "must follow the procedures set out in *United States v. Curcio,* 680 F.2d 881, 888–90 (2d Cir. 1982), to secure a knowing, voluntary, and intelligent waiver from the defendant of his right to a non-conflicted attorney." *Id.* If, on the other hand, the conflict is unwaivable, the court must disqualify counsel. *See id.* The Second Circuit has identified two narrow categories of conflicts that are *per se* unwaivable: "where [the] defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *United States v. Fulton*, 5 F.3d 605, 611 (2d Cir. 1993). As to the second category, disqualification is proper if: (1) there is at least a "reasonable possibility" that a witness's allegations concerning counsel's criminal conduct are true; and (2) the conduct is "sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." *Id.*

Here, the district court acted within its discretion in concluding that Cassar presented a *per se* conflict of interest requiring his disqualification. First, the facts before the district court demonstrated more than a "reasonable possibility," *see id.*, that Cassar sought to "corruptly" influence Hamil's testimony, *see* 18 U.S.C. § 1512(b). The district court required the parties to appear on four separate occasions on November 25, 2019 to inquire into the conflict and to

3

determine whether it was waivable, and it found that Cassar sought "to corrupt [Hamil] with [his] version of the facts." App'x at 60. As the district court explained, Cassar sent an unsolicited, out-of-the-blue text message to Hamil that linked to a five-month-old article about a factual scenario mirroring the defense's theory of the case. He sent the text message only twenty minutes after he received supplemental 18 U.S.C. § 3500 materials pertaining to Hamil and knowing that the government intended to call Hamil as a witness the next week to testify that Lewis confessed to the charged murder. Moreover, Cassar refused to provide the court with any plausible alternative explanation for his conduct. Indeed, he initially provided no explanation for the text message, and it was not until his third appearance concerning the conflict that he claimed he sent the message by accident.

Second, the district court reasonably concluded that the facts before it demonstrated that Cassar's conduct was "sufficiently related to the charged crimes to create a real possibility" of compromising his vigorous defense of Lewis. *See Fulton*, 5 F.3d at 611. The superseding indictment charges Lewis with three counts of witness tampering and one count of conspiracy to tamper with witnesses in connection with the instant case. Although the superseding indictment does not allege that Lewis tampered with Hamil, counsel's alleged "crimes need not be identical" to the defendant's crimes to warrant disqualification under the *per se* rule. *United States v. Williams*, 372 F.3d 96, 104 (2d Cir. 2004). Moreover, the government proffered emails, which the district court reviewed, strongly suggesting that Lewis had also been attempting to influence Hamil's testimony. Ultimately, Cassar's conduct created precisely the sort of conflict the *per se* rule endeavors to prevent from materializing at trial: a desire for self-preservation, fueled by a "fear of, and desire to avoid, criminal charges." *Fulton*, 5 F.3d at 613. Among other things, a desire to avoid criminal charges could no doubt have affected Cassar's "cross-examination of the

4

witness who implicated" him and of any "other witnesses who could [have] provide[d] corroborating evidence." *Id.*

Lewis's remaining arguments are without merit. To the extent Lewis argues that the district court abused its discretion because it failed to consider alternatives to disqualification, the district court was *required* to disqualify Cassar upon finding that he presented a *per se* unwaivable conflict. *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (noting that *per se* unwaivable conflicts "mandate disqualification"). And to the extent Lewis argues that the district court abused its discretion because it failed to hold a *Curcio* hearing, "the court was not required to conduct a *Curcio* hearing" upon finding that Cassar presented a *per se* unwaivable conflict. *United States v. Cain*, 671 F.3d 271, 295 n.11 (2d Cir. 2012). We therefore conclude that the district court did not abuse its discretion in disqualifying Cassar during Lewis's trial.

## B. Double Jeopardy

The district court found there was a manifest necessity to declare a mistrial based upon Cassar's disqualification and the need to preserve the integrity of the proceedings. "We review the decision of a trial court that there is a manifest necessity to declare a mistrial for abuse of discretion." *United States v. Razmilovic*, 507 F.3d 130, 137 (2d Cir. 2007). When a court declares a mistrial over a defendant's objection, the Double Jeopardy Clause permits the defendant to be retried "only when the original decision to declare a mistrial was compelled by 'manifest necessity.'" *Id.* at 136 (quoting *United States v. Perez*, 22 U.S. (9 Wheat) 579, 580 (1824)).

Under the "manifest necessity" standard, "the prosecution bears the 'heavy' burden of showing a mistrial to have been demanded by a 'high degree' of necessity." *United States v. Kwang Fu Peng*, 766 F.2d 82, 85 (2d Cir. 1985) (quoting *Arizona v. Washington*, 434 U.S. 497, 505–06 (1978)). At the same time, "[a] great deal of discretion . . . [is] vested in the trial judge,

who is usually best situated to determine the degree of necessity for the declaration of a mistrial." *Dunkerley v. Hogan*, 579 F.2d 141, 145 (2d Cir. 1978). Thus, "reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised 'sound discretion' in declaring a mistrial." *Washington*, 434 U.S. at 514.

Here, having determined that the district court acted within its discretion in disqualifying Cassar, we have little difficulty concluding that its declaration of a mistrial was an exercise of its sound discretion. In its decision denying Lewis's motion to dismiss, the district court clarified that it found a manifest necessity to declare a mistrial due to the likely effect of Cassar's disqualification upon the jury and the time it would take for substitute counsel to prepare for trial. Given that Cassar was the only attorney to represent Lewis and that it would likely take weeks, if not months, for substitute counsel to prepare to try this complicated racketeering case—in which Lewis, if found guilty as charged, faces a mandatory life sentence—we can discern no abuse of discretion in the district court's conclusion that there was a manifest necessity to declare a mistrial. *See Kwang Fu Peng*, 766 F.2d at 86–88 (affirming a "district court's declaration of a mistrial [as] an exercise of its sound discretion" where mistrial was necessitated by "the likely effect upon the jury of [defense counsel's] disqualification" and "the need of substitute counsel for time to prepare properly" (internal quotation marks omitted)).

Lewis's argument that the district court abused its discretion because it failed to consider the alternatives to a mistrial is without merit. For one thing, a district court need not "make explicit findings that there were no reasonable alternatives to a mistrial." *United States v. Klein*, 582 F.2d 186, 194 (2d Cir. 1978). For another, in noting the substantial period of time it would take for substitute counsel to prepare for trial, the district court clearly considered a continuance to be infeasible.

And Lewis's argument that the government caused the mistrial to avoid an acquittal is belied by the record. Notably, one "important factor" for a district court to consider in determining whether there exists a manifest necessity to declare a mistrial "is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process." *United States v. Jorn*, 400 U.S. 470, 485–86 (1971). But based on the facts before the district court on November 25, 2019, there can be no dispute that Cassar's unprofessional conduct in seeking to influence Hamil's testimony—as opposed to the government's conduct in representing that it would be expanding its prior investigation of Cassar to encompass his purported witness tampering in connection with the instant case—caused Cassar's disqualification, and by extension, the mistrial.

As the district court acted within its discretion in finding that there was a manifest necessity to declare a mistrial, it properly denied his motion to dismiss the superseding indictment on double jeopardy grounds.

\* \* \*

We have considered Lewis's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7