**Bobby Joe HARRISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–00992–CR.**

Court of Appeals of Texas, Dallas.

Nov. 12, 1986.

Discretionary Review Granted Feb. 18, 1987.

Raymond G. Wheless, Plano, for appellant.

H. Ownby, Dist. Atty., Roger V. Dickey, Asst. Dist. Atty., McKinney, for appellee.

Before VANCE, HOWELL and HOLLINGSWORTH, JJ.

HOLLINGSWORTH, Justice.

Bobby Joe Harrison appeals his conviction for hindering apprehension after a plea of guilty. Punishment was assessed at 10 days' confinement and a $500 fine. His only contention on appeal is that the trial court erred in denying his "Special Plea of Double Jeopardy." We disagree; accordingly, we affirm.

In an earlier proceeding, a jury trial commenced on appellant's plea of not guilty to the charge of hindering apprehension. After testimony commenced, the court declared a mistrial. Later, appellant's special plea was overruled by the trial court. Thereafter, appellant pled guilty to the charge and was convicted. He brings this appeal on the trial court's denial of his plea of double jeopardy.

This appeal presents two questions of first impression in Texas: (1) do we have jurisdiction to consider appellant's attack; and (2) does the fact that a defendant's counsel is a potential witness in the defendant's trial constitute "manifest necessity" so as to justify granting a mistrial?

■ Our threshold inquiry must be to determine whether we have jurisdiction to consider appellant's attack. Appellant entered an open plea of guilty; that is, one without a plea-bargain agreement. Because appellant's plea of guilty was not pursuant to a plea bargain agreement, appellant has waived the right to *appeal* all but jurisdictional errors. *King v. State*, 687 S.W.2d 762, 766 (Tex.Crim.App.1985);

*McCall v. State*, 690 S.W.2d 669, 670–71 (Tex.App.–Dallas 1985, pet. ref'd). *See Helms v. State*, 484 S.W.2d 925, 927 (Tex. Crim.App.1972). Such a plea, however, will not waive a double jeopardy claim. *Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975). If double jeopardy raises a jurisdictional defect, then appellant's remedy is through an appeal under article 44.02 of the Texas Code of Criminal Procedure. The defect is so serious that it is not waived by failing to present a special plea and may be raised for the first time by a post-conviction habeas corpus challenge. *See Ex parte Morehead*, 596 S.W.2d 895, 896 (Tex.Crim.App. 1980); *Ex parte Scelles*, 511 S.W.2d 300, 301–02 (Tex.Crim.App.1974) (both allowing a double-jeopardy contention to be raised by habeas corpus).

Courts in a number of jurisdictions have expressly held that a double-jeopardy attack raises a "jurisdictional defect." *State v. Madera*, 198 Conn. 92, 503 A.2d 136, 139, n. 6 (1985); *State v. Dubaz*, 468 So.2d 554, 556 (La.1985); *People v. Reid*, 113 Mich. App. 262, 317 N.W.2d 589, 591 (1982), *aff'd*, 420 Mich. 326, 362 N.W.2d 655 (1984); *State v. Cody*, 525 S.W.2d 333, 335 (Mo. 1975). *See also Carbaugh v. State*, 294 Md. 323, 449 A.2d 1153, 1155 (1982). The rationale for this holding stems from the proposition that a jurisdictional defect is one which prevents a trial from occurring. Since a successful double jeopardy claim will deprive the trial court of its jurisdiction to proceed to a conviction, then it follows that double-jeopardy attacks raise a "jurisdictional defect."

■ Although our research has failed to disclose any Texas authority, either for or against the proposition that double jeopardy raises a jurisdictional defect, after examining the case law set out above, we hold that such an attack does raise a jurisdictional defect and is, therefore, subject to review in this appeal. Accordingly, we address the merits of this appeal.

The charge of hindering apprehension arose out of an incident taking place on

September 18, 1983, in McKinney, Texas. Officer A.D. Ingram of the McKinney Police Department stopped appellant's brother, Bryan Harrison, for running a stop sign. After receiving a traffic citation, Bryan Harrison sped off. Ingram pursued Bryan who proceeded to run several more stop signs. Bryan went to his home; at that point Officer Ingram attempted to place him under arrest. A struggle ensued between Ingram and Bryan. During the struggle, appellant grabbed Ingram from behind. Ingram released his hold on Bryan, and Bryan struck Ingram in his eye. Due to appellant's interference, Bryan Harrison evaded arrest that night. Appellant was arrested for hindering apprehension.

■ Appellant's plea of double jeopardy turns on the propriety of a mistrial at appellant's earlier trial on the charge of hindering arrest. At that trial defense counsel cross-examined Officer Ingram concerning his testimony that he had received a black eye. The following line of questioning took place:

Q. Do you recall coming to the window [of the Collin County Sheriff's office] to look to see who was getting Mr. Harrison out of jail on September the 19th, 1983?

A. I remember walking up to the door, but I don't remember seeing anyone.

Q. You don't remember seeing anyone?

A. No, sir.

Q. Would you be surprised if I said I remember seeing you?

A. No, sir.

Q. If you'd had a black eye, do you think I would have seen it through that window?

A. I couldn't say, because I didn't see anyone in that lobby.

Shortly after this exchange, Officer Ingram was excused and questioning of the next witness began. Not long into direct examination of that witness, the prosecuting attorney asked to make a motion outside the presence of the jury. At that time he asked the court to disqualify defense counsel from representing appellant on the ground that the defense counsel had injected himself as a fact witness in the cause. The trial court agreed that counsel should be disqualified because "of all the ramifications of testing [counsel's] credibility and an attempt by the State's attorney to possibly impeach [counsel] and get into a rather messy situation." The trial court subsequently called in the jury and granted a mistrial. The court then began another trial and overruled appellant's plea of double jeopardy.

By his questions to Officer Ingram, defense counsel attempted to impeach a witness based upon counsel's personal knowledge. As such, counsel introduced facts not yet in evidence and established himself as a potential witness in the case. Accordingly, we are faced with deciding whether a mistrial is the appropriate response when it becomes evident during trial that a defendant's counsel has become a potential witness in his or her client's case.

■ After a mistrial has been declared without the defendant's request or consent, whether there can be a new trial depends on whether there was a "manifest necessity" for the mistrial or whether the ends of justice would otherwise be defeated. *Sewell v. State*, 696 S.W.2d 559, 560 (Tex. Crim.App.1983); *Chvojka v. State*, 582 S.W.2d 828, 830 (Tex.Crim.App.1979). The first question, though, is whether jeopardy has attached. In a jury trial jeopardy attaches when the jury is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978); *Sewell*, 696 S.W.2d at 560. Clearly, jeopardy had attached in the case before us.

Our consideration next turns to whether there was a "manifest necessity" for granting the mistrial. In *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1973) the United States Supreme Court considered "manifest necessity" to be a situation in which an impartial verdict cannot be reached, or if an obvious procedural error has occurred which would mandate reversal on appeal. In such situations it would not serve the "ends of public justice" to continue with the trial.

A similar problem was presented in *United States v. Peng*, 602 F.Supp. 298 (S.D.N.Y.1985). During cross-examination of a witness, the defendant's attorney made reference to a conference held in his office with the testifying witness. The attorney, thereby, became a potential witness in the trial. *Id.* at 299. The court examined the testimony in light of the disciplinary rules of the American Bar Association Code of Professional Responsibility and concluded that allowing counsel to continue to represent the defendant would subvert the purpose of the disciplinary rules. *Id.* at 302. Further, the court concluded that, in weighing the materiality of counsel's testimony, all doubts were "to be resolved in favor of the withdrawal or disqualification." The court found that the taint that would occur should counsel be allowed to remain as the defendant's counsel outweighed the defendant's sixth amendment interest in choice of counsel. *Id.* at 304. Finally, the court concluded that the effect of the "taint" on how the jury would weigh the witness's testimony in light of counsel's statements, regardless of whether counsel actually testified, sufficiently established a "manifest necessity" to grant a mistrial. *Id.* at 304–05.

In affirming *Peng*, the Second Circuit rejected the contention of a double-jeopardy bar to retrial by upholding the district court's finding of "manifest necessity." *United States v. Kwang Fu Peng*, 766 F.2d 82, 85–88 (2d Cir.1985). The court considered both the fear that counsel's credibility had been irreversibly injected as an issue in the trial and that the jury would be unacceptably affected by the attorney's double role as counsel and an unsworn witness. *Id.* at 86–87. Based upon the facts presented, the court found that granting a mistrial was within the sound discretion of the trial court. *Id.* at 88. *See also People v. Gentile*, 96 A.D.2d 950, 466 N.Y. S.2d 405, 407–08 (1983).

As was the attorney in *Peng*, appellant's trial counsel was faced with a "Catch–22" situation. Disciplinary Rule 5–102 of the Texas Code of Professional Responsibility [1] provides:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness *on behalf of his client,* he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4). [2]

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness *other than on behalf of his client,* he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

[Emphasis added.]

Counsel's personal knowledge has a direct bearing on the testimony and credibility of Officer Ingram. Should counsel's personal observations support the complaining officer's testimony, then counsel runs afoul of DR 5–102(B). If, as appellant represents on appeal, counsel's knowledge is contradictory to that of Officer Ingram, then counsel violates DR 5–102(A) since his tes-

---

1. SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. XII, § 8 (Code of Professional Responsibility) DR 5–102 (Vernon 1973).

2. DR 5–101(B)(1) through (4) provides that an attorney may testify:
   (1) If the testimony will relate solely to an uncontested matter.
   (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
   (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
   (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

timony would not fall within any of the exceptions set out therein.

We agree with the district court in *Peng* that any doubt should be resolved in favor of the withdrawal or disqualification of counsel. Further, even in the event that counsel was not called to testify, the jury's perspective would remain tainted by counsel's "double role as counsel and unsworn witness." Counsel's own actions precipitated the granting of a mistrial. Based upon the facts presented, we hold that the trial court's action granting a mistrial implicitly reflects a finding of "manifest necessity" for appellant's retrial. *See Torres v. State*, 614 S.W.2d 436, 442 (Tex.Crim.App.1981).

We do not hold that the mere possibility that a defendant's trial attorney could be called as a witness during the defendant's trial mandates disqualification and a mistrial. However, under the facts presented, we hold that such a finding was within the trial court's exercise of sound discretion. Accordingly, appellant's ground of error is overruled.

The judgment of the trial court is affirmed.

HOWELL, J., files a dissenting opinion.

HOWELL, Justice, dissenting.

I dissent. I cannot join the majority's conclusion that a mistrial was manifestly necessary in this case for two reasons.

First, the State waived its right to obtain the relief requested because it failed to make a timely request. The record reflects that the cross-examination of the officer continued to its conclusion, that the State engaged in redirect examination of the officer, that the officer was excused as a witness, and that the State began the examination of another witness. At that time, the State moved to disqualify defense counsel and thereby prevent him from further participation in the case. The Court granted the motion. Having deprived the appellant of counsel, and acting on its own motion, the court declared a mistrial. Although the court went beyond the State's

motion, the motivating force and the virtually inevitable result of the State's motion was the mistrial.

The record reflects no timely objection by the State and no request for an instruction to the jury to disregard defense counsel's comments. Were defense counsel in the posture in which the State finds itself, we would not hesitate to hold that the right to exclude counsel had been waived for want of a prompt motion. *E.g., Nash v. State*, 651 S.W.2d 432, 433 (Tex.App.–Dallas 1983), *aff'd*, 664 S.W.2d 343 (Tex.Crim. App.1984). There is no reason why this rule should not apply with equal force to the State.

Second, the term "manifest necessity" for entry of mistrial means that there must exist a "high degree" of necessity. *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978). This record presents no necessity of that magnitude. Neither is it permissible for the State or the court to create manifest necessity by excluding defense counsel unless the situation is such that no fair trial may ensue with the continued presence of defense counsel. Whether defense counsel may or may not have been subject to disciplinary action for accepting or continuing employment after he realized or should have realized that he might be a witness has no bearing on the question whether manifest necessity existed. The law specifies ample means for the enforcement of the Code of Professional Responsibility other than the disruption of trials. Insofar as this case is concerned, the only question raised by the double jeopardy provisions of our State and Federal Constitutions is whether a fair trial could be had after the exchange between the officer and defense counsel. *See Schaffer v. State*, 649 S.W.2d 637, 639 (Tex.Crim.App.1983).

In analyzing this question, it should be noted at the outset that whether the officer had a black eye had only a slight connection with appellant's guilt of the offense charged. Appellant was not on trial for assault and he was never accused of having struck the officer. The relevance of

the black eye only bore upon the question of the officer's credibility.

Further, in arguing its motion to exclude counsel, the State never contended that it had any plan to call defense counsel as a witness. In fact, the prosecutor refused to commit himself on this question. Accordingly, the mistrial could not have rested on the ground that the State was deprived of the testimony of defense counsel. On the other hand, defense counsel made it plain in resisting the State's motion that he did not expect to offer his own testimony. Having made this commitment, the attorney would not have been permitted to testify on behalf of his client.

Neither could any possible prejudice to the State arising from counsel's failure to testify, after having disputed the officer's black eye testimony through cross-examination, rise to the level of manifest necessity. A request for an instruction to disregard, a far less intrusive remedy, would have adequately cured the situation.

The only remaining possible support for a claim of manifest necessity would be that appellant would have been deprived of a fundamentally fair trial if his attorney did not testify. In other words, was appellant's counsel rendering ineffective assistance by declining to testify? We cannot so hold. There is no direct showing of what counsel's testimony would have been—only an innuendo. Again, the matter only related to the officer's credibility. Very likely, it would have been unwise for counsel to pit his uncorroborated testimony with that of the officer. By engaging in a "swearing match" with an apparently disinterested public servant, counsel could have easily destroyed his effectiveness as an advocate. It follows that the decision not to testify fell within the category of reasoned trial strategy and could not be held to constitute ineffective assistance of counsel.

In sum, mistrial was granted without a showing that the testimony of defense counsel would or should have been offered by either party. Where was the manifest necessity? It cannot be grounded on some need to grant specific performance of the Code of Professional Responsibility because sanctions against the attorney are the ordinary remedy for attorney misconduct.

I dissent. The plea of double jeopardy should be sustained and acquittal granted.