Bobby Joe HARRISON, Appellant,

v.

The STATE of Texas, Appellee.

No. 1269–86.

Court of Criminal Appeals of Texas, En Banc.

March 15, 1989.

Raymond G. Wheless, Plano, for appellant.

H. Ownby, Dist. Atty., and Roger V. Dickey, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant, Bobby Joe Harrison, was convicted after pleading guilty to the offense of hindering apprehension. The trial court assessed a punishment of ten days' confinement and imposed a $500.00 fine.

The Dallas Court of Appeals affirmed appellant's conviction finding that the trial court did not err in denying appellant's plea of double jeopardy. *Harrison v. State*, 721 S.W.2d 904 (Tex.App.—Dallas 1986).[1] We granted appellant's petition for discretionary review to determine the correctness of the Court of Appeals' finding. We find, however, that we must vacate the lower appellate court's judgment.

Appellant's plea of double jeopardy is based on the mistrial granted in an earlier trial on the same charges. At that earlier trial, the State introduced evidence that in September of 1983, Officer A.D. Ingram of the McKinney Police Department stopped appellant's brother for running a stop sign. After receiving a citation, the brother sped away. The officer pursued the brother to his home and there attempted to place him

under arrest. A fight ensued between the brother and the officer during which appellant grabbed Officer Ingram from behind. The officer testified that when this happened appellant's brother was able to hit him (the officer) in the eye. Further, the officer testified that his eye had been blackened because of this.

During his cross-examination of Officer Ingram, the defense attorney asked the following questions:

"Q. Do you recall coming to the window [of the Collin County Sheriff's office] to look to see who was getting Mr. Harrison out of jail on September the 19th, 1983?

"A. I remember walking up to the door, but I don't remember seeing anyone.

"Q. You don't remember seeing anyone?

"A. No, sir.

"Q. Would you be surprised if I said I remember seeing you?

"A. No, sir.

"Q. If you'd had a black eye, do you think I would have seen it through that window?

"A. I couldn't say, because I didn't see anyone in that lobby."

Shortly after this exchange, the prosecuting attorney asked to make a motion outside the presence of the jury. The jury was removed from the courtroom at which time the prosecutor asked the court to disqualify defense counsel from representing appellant on the ground that the defense counsel had injected himself as a fact witness in the cause. The following colloquy took place:

"MR. SHIPMAN [State's Attorney]: It is the State's contention that when Mr. Wheless [appellant's attorney] voluntar-

---

1. Appellant appealed from a conviction had on his unnegotiated plea of guilty. Initially, the Dallas Court of Appeals was confronted with the rule expressed in *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Cr.App.1972). There we held that "[w]here a plea of guilty is voluntarily and understandingly made, all non-jurisdictional defects including claimed deprivation of federal due process are *waived*." (Emphasis added). The Court of Appeals, however, labeled the *Helms* rule to be "jurisdictional" and implied that it would lack jurisdiction to entertain the appeal in this case but because jeopardy problems "will deprive the trial court of its jurisdiction to proceed to a conviction, then it follows that double-jeopardy attacks raise a 'jurisdictional defect.'" *Harrison*, 721 S.W.2d at 905. We did not grant appellant's petition to review this holding by the Court of Appeals.

ily brought forth the fact that he was a material witness to injuries resulting to Officer A.D. Ingram, then he brought to bear the Court's duty to enforce the disciplinary rules.

"And that at this time, based on that, the Court should disqualify Mr. Wheless as the attorney for Bobby Joe Harrison.

"THE COURT: How is whether Mr. Wheless noticed the black eye on the officer a material issue?

"MR. SHIPMAN: Under the facts, it's a material issue because apparently from what Mr. Wheless is saying, there was never a black eye. That's what I get from the testimony.

" 'Wouldn't I have seen a black eye?'

"THE COURT: It's not an element of the offense, is it?

"MR. SHIPMAN: It bears on the credibility of my witnesses. Also bears on the facts surrounding this case.

"My officer—the officer does state that, yes, I had a black eye. Mr. Wheless—this does not necessarily have to be an element of the offense to be a material issue. A material issue is whether or not Officer A.D. Ingram was subdued. And the facts in this case—Officer Ingram stated Bryan Keith Harrison hit me in the face. It all bears on the credibility of the witnesses.

"THE COURT: The credibility and the element of whether he was subdued.

"MR. SHIPMAN: And I think that is very important and I think it is a material issue in this case."

(Discussion was held off the record, after which the following proceedings were had in open Court:)

"THE COURT: All right. Mr. Shipman, the DA, has advised the Court that he would call Mr. Wheless as a witness, since Mr. Wheless has raised the issue of the credibility of Officer Ingram.

"The only way to test Mr. Wheless' credibility in disputing Officer Ingram is to call Mr. Wheless as a witness.

"In fairness to the State, the State should be allowed to do that. I think it would be a hardship on Mr. Harrison not to have Mr. Wheless as a lawyer, al-though certainly another lawyer can be educated about the case.

"If Mr. Wheless is called as a witness, I think it's my duty to disqualify him as counsel, because of all the ramifications of testing Mr. Wheless' credibility and an attempt by the State's attorney to possibly impeach Mr. Wheless and get into a rather messy situation.

"Mr. Wheless indicates that if he were called as a witness, he would ask the Court to withdraw. Is that correct?

"MR. WHELESS [Defense Attorney]: That's correct, Your Honor.

"THE COURT: Okay. So I intend to bring the jury back in and declare a mistrial, and retry the case at another time."

(Discussion was held off the record, after which the following proceedings were had in open Court:)

The jury returned to the courtroom and was dismissed by the trial court. Appellant lodged no objection to this being done. On appeal, however, appellant alleged that the trial court erred in overruling his plea of double jeopardy submitted to the court prior to his plea of guilty.

The Fifth Amendment prohibition against twice putting a person in jeopardy for the same offense protects a criminal defendant's "valued right to have his trial conducted by a certain tribunal." See *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Balanced against this right, however, is the right of society to be protected against those guilty of crimes by enabling society to retry the accused under certain circumstances. *Hunter*, 336 U.S. at 689, 69 S.Ct. at 837.

In addressing these competing concerns, rules have emerged that focus upon whether the defendant has consented to the declaration of a mistrial. See, e.g., *Arizona v. Washington, supra; Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed. 2d 425 (1973); *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543

(1971); *McClendon v. State,* 583 S.W.2d 777 (Tex.Cr.App.1979); *Chvojka v. State,* 582 S.W.2d 828 (Tex.Cr.App.1979). Where the mistrial was declared without the consent of the defendant, he or she cannot be retried unless there existed a "manifest necessity" for the mistrial. *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). See, e.g., *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). The "manifest necessity" exception protects a defendant's interests in having his or her case finally decided by the jury which initially heard the matter by ensuring that the mistrial was indeed required, while also protecting society's interest in obtaining just results by allowing retrial of a defendant where a declaration of mistrial was necessary. *Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2087. Where a defendant consents to a mistrial, on the other hand, the "manifest necessity" doctrine does not come into play. Retrial is generally permitted because the defendant himself has elected to terminate the proceedings and to begin anew. *Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2087; *United States v. Tateo,* 377 U.S. 463, 467, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964); *Torres v. State,* 614 S.W.2d 436, 441 (Tex. Cr.App.1981). Therefore, the initial inquiry that the Court of Appeals should have made was whether appellant consented to a mistrial understanding that consent need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial. *Torres,* 614 S.W.2d at 441 citing *Gori v. United States,* 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

The Court of Appeals found that because the defense attorney had injected himself as a fact witness in the case, then "the trial court's action granting a mistrial implicitly reflect[ed] a finding of 'manifest necessity' for appellant's retrial." *Harrison,* 721 S.W.2d at 908. Whether there existed a manifest necessity to declare a mistrial at appellant's first trial is immaterial if appellant consented to the trial court's actions. We therefore vacate the judgment of the

Court of Appeals and remand the cause to it to make this determination.