In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-084 CR


____________________



LUTHER KENNETH GARNER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Cause No. 89302






 MEMORANDUM OPINION 


 In this case, we consider whether double jeopardy barred the trial of Luther Kenneth
Garner for the felony offense of injury to a child. See Tex. Pen. Code Ann. § 22.04 (Vernon
Supp. 2006). Claiming the trial court abused its discretion when it declared a mistrial and
denied his plea of former jeopardy, Garner appeals his conviction. We affirm.





Procedural Background


 After jury selection but before testimony started, the trial court sua sponte declared
a mistrial. Explaining the reason for its decision, the court stated that one of the jurors failed
to participate when it administered the oath. The trial court dismissed the jury and granted
Garner a continuance. Garner filed a plea of former jeopardy. After the trial court denied
Garner's plea, the prosecution and defense selected a second jury to hear Garner's case. The
second jury found Garner guilty and the trial court sentenced him to life imprisonment. 

Factual Background


 After selection of the first jury, the trial court asked the jury members to stand and
raise their right hands. The record reflects that the jurors were sworn. Then, the court
instructed the jurors regarding proper juror conduct and asked whether any of them had
"anything right now" to discuss with the court. Receiving no response, the court released the
jurors and informed them to return the next morning. 

 When court reconvened the next day, the trial court made the following statement on
the record, with Garner present: 

 The Court: Yesterday afternoon I administered the oath. The record
probably reflects that the oath was administered and all jurors
affirmatively stated that they would follow the oath. However,
Juror No. 32, . . . , the Court observed at the time that the oath
was given that not only did [she] not take the oath but [she]
made facial expressions that convinced the Court that [she]
would not only not take the oath but refused to take the oath.


 It's my opinion that rehabilitation of a disqualified juror by not
taking the oath is impossible. The Court's opinion is that this
case is too important to Mr. Garner and to The State of Texas to
have a juror who refuses to take the oath. It is the Court's
opinion that, with that juror not taking the oath, that the jury
panel has not been sworn. Therefore, jeopardy is not attached. 
And what I'm going to do is declare a mistrial on my own. We
will get a new panel of 36. We will begin jury selection at 10:00
o'clock this morning.


 Any comments from The State about that?


 [Prosecutor]: No, sir, Your Honor.


 The Court: Any from the defense?


 [Counsel]: Your Honor, I have two concerns. Number one, all that the
Court has dictated into the record, I did not observe that and of
course, I do not disagree with what the Court says. It's just I did
not observe it. I was attending to other things. And while the
Court is doing this, as I understand, sua sponte, on its own, we
certainly - you know, if the Court is doing that on its own, then,
of course, we understand that that's within the Court's discretion
to do so. But my concern is a greater concern for the new panel. 
There was press coverage last night. This panel that you swore
in yesterday, you gave them specific instructions not to look at
anything on the news, et cetera, et cetera, et cetera. The new
panel that's coming in today, they're not under those
instructions. It was portrayed rather evidently on television - I
have not checked the print media as of yet - but my concern is
that the panel will now be tainted, the new panel. And we're
asking the Court, if the Court is declaring a mistrial sua sponte,
that you grant us a continuance in this matter to let the press
coverage subside and reconvene even as early as next Monday
with a fresh panel that will not be tainted by any particular
overnight press coverage. That is my sincere concern, Your
Honor, that Mr. Garner may be prejudiced by what took place in
the press.


 The Court: Here is -- this is the way we'll resolve that. I don't want to put
the case off. However, I'll give you ample opportunity under
35.16 (a)10 to explore this entire panel. If any of these potential
members have watched the news and have formed some opinion
that will influence their verdict, then naturally they'll be
excluded. If we run into very much of that, then certainly I'll
grant your request. But I think that, for the sake of time, we
need to explore that, let's see if anybody saw it. If it does
influence their verdict, then certainly we'll take care of that. 
The whole purpose of me granting this mistrial is out of an
abundance of caution to Mr. Garner.


 I want to follow up by saying that my further observations of
this juror was from the time I called her name, it was obvious to
the Court through her facial expressions, her actions, her
demeanor, that there was something very wrong with her. I
don't know if she did not want to be here. I don't know what
the answer was. But whenever I called her name, she stood up,
she stormed up to the jury box, the oath was administered, she
did not take the oath. In fact, she rolled her eyes whenever
everybody responded "yes." The second that I released the
panel yesterday afternoon, the same juror stood up and
immediately stormed out of the courtroom. So, out of an
abundance of caution to Mr. Garner to make sure that he gets an
absolute fair trial in this case, that's why we're granting this
mistrial.


 Once, again, under 35.16 (a)10, for this potential panel, I'll give
you-all every opportunity to explore that, to check into that as
deep as you want to go, as to whether or not any of these new
members in any way have formed an opinion and if so, would it
influence their verdict as to Mr. Garner. If so, they will be
immediately excused and dismissed from this panel. Okay? 

 Anything further from either side? 


 [Counsel]: No, sir, Your Honor.


 The Court: We'll start at 10:00 o'clock.


 (Short break, proceedings resume at 10:00, open court, defendant present)


 The Court: We're back on the record in The State of Texas Vs. Luther
Garner.


 [Defense Counsel], I have considered your request as to the
possible tainting of this panel. I'm going to grant that request,
and I'm going to continue this case until Monday at 1:30. 


 Mr. Garner, do you have any problem with that whatsoever?

 Defendant: No, sir.

 The Court: Do you understand that that's being done out of caution to you
to make sure that you get 36 people to choose from that can be
fair and impartial to you and I don't want to take any chances of
having somebody on this jury who may have heard something
about your case? 

 Defendant: I appreciate it, sir.

The trial court then announced that the case would reconvene later.

 Prior to beginning the trial before the second jury, the court heard Garner's plea of
former jeopardy. However, the court was not persuaded by the contention that double
jeopardy had attached and proceeded to trial before the second jury. 

 In his single issue on appeal, Garner asserted that the trial court "abused its discretion
when it declared a mistrial after the jury was sworn and denied [his] Plea of Former Jeopardy
without an adequate finding of manifest necessity and when less drastic alternatives were
available." The State responded with two arguments. First, it asserted the trial court did not
abuse its discretion in declaring a mistrial because the jury was never sworn. Second, the
State said that Garner consented to the mistrial because he did not timely lodge an objection
to the trial court's decision to declare a mistrial and further personally told the court that he
appreciated the court's actions. 

 The Fifth Amendment to the United States Constitution protects defendants from
being tried twice for the same offense. Alvarez v. State, 864 S.W.2d 64, 65 (Tex. Crim. App.
1993) (citing Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717,
727 (1978)). If the jury has been impaneled and sworn, thus placing the defendant in
jeopardy, double jeopardy bars a re-trial if the jury is discharged without reaching a verdict. 
Ex parte Fierro, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002). "An exception to this rule is
made if the defendant consents to a retrial, or if a retrial before a new jury is mandated by
some form of manifest necessity." Torres v. State, 614 S.W.2d 436, 441 (Tex. Crim. App.
1981) (citing, among other cases, Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824,
830, 54 L.Ed.2d 717, 728 (1978)). 

 We consider first whether Garner consented to the mistrial. If he did, we need not
consider the issue of "manifest necessity." See Harrison v. State, 767 S.W.2d 803, 806 (Tex.
Crim. App. 1989). Consent need not be express, "but may be implied from the totality of 
circumstances attendant to a declaration of mistrial." Id. The trial court must give the
defendant an adequate opportunity to object to the mistrial before a reviewing court will
conclude that his failure to object constitutes implied consent. Garner v. State, 858 S.W.2d
656, 659 (Tex. App.-Fort Worth 1993, pet. ref'd). In addition, the appellate court does not
infer consent from a silent record. Id. 

 When considering all of the circumstances in this case, we find that Garner effectively
consented to the mistrial. The record is not silent. Instead, the trial court thoroughly
explained its reasons for declaring a mistrial. Further, the trial court gave Garner's counsel
adequate opportunity to object before it discharged the first jury. See id. However, when
informed of the trial court's decision to declare a mistrial, Garner's counsel stated only two
concerns. First, he did not observe the juror's behavior, and, second, he was concerned about
possible prejudice in the new panel if it was picked from the existing pool. Then, counsel
asked for a continuance because the press had covered Garner's case extensively. While the
trial court initially denied the continuance, the court reconsidered and granted Garner's
motion for continuance. Further, the record shows that Garner, himself, stated that he had
no problems with the continuance.

 Because we find Garner consented to the mistrial, we conclude that double jeopardy
did not preclude his trial before the second jury. We overrule Garner's issue. The trial
court's judgment is affirmed. 

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on October 13, 2006

Opinion Delivered December 27, 2006

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.