BAILEY C. MOSELEY, Justice,
dissenting.
I must respectfully dissent from the majority in this ease because I believe that Leonard Pierson, Jr., has been subjected to double jeopardy that is prohibited by the Fifth Amendment to the United States Constitution. This is something done with a certain reluctance because I strongly respect my colleagues and do not perceive myself as being blessed with any more percipience than they possess.
In Pierson’s first trial on these charges, immediately after uttering a salutary greeting to her, the first question posed by defense counsel to the alleged victim was, “Did you also make an allegation that [Pierson] did these same things to his own daughter?” The posing of this singular question precipitated the trial court’s decision to grant the State’s motion for a mistrial.
As soon as this question was asked, the State objected and the trial court cleared the jury from the courtroom. During the ensuing discussion, the trial judge made what I believe was an incorrect statement, the belief in which appears to have borne substantial responsibility for its decision to declare a mistrial: “Absent an omission *423 from the victim or the victim’s mother that the outcry against another, person was actually false, you can’t get into that they’ve made allegations against other people that were false.” The State complained that the question posed was “way not allowed in cross. I mean, I think that’s grounds for a mistrial.” The State later urged, “I’m asking for a mistrial.” The trial court did not act precipitously but, rather, took time to discuss and argue the issue with the attorneys for both sides. During this discussion, the trial judge observed, “I don’t see how there’s any possible way that a jury could disregard this kind of testimony.” [16] On resuming (still outside the presence of the jury), the trial court gave Pierson- another opportunity to defend his right to pursue that line of questioning. Being apparently unconvinced by the arguments given, the trial judge then announced,
It serves only to interject issues that are collateral which would potentially confuse the jury, and I don’t know how it can be cured with an instruction to the jury. So with that said, I’m going to grant the state’s motion for a mistrial. Since I find that this was done because of actions of the defendant and not because of the actions of the state, then there’s no jeopardy that attaches.
The majority seems to take the position that in situations wherein the State was not blameworthy in creating the situation giving rise to the grant of a mistrial (i.e., when there is no one to whom fault can be attributed or if the fault lay at the feet of the defendant), the reviewing court must give “great deference” to a trial court’s decision to declare a mistrial. This is a position also argued by the State in this case, resting its argument to a great degree on Arizona v. Washington, 434 U.S. 497, 508, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). It should be noted that the United States Supreme Court in that case recognized that there should be a sliding scale or a spectrum of differing degrees of deference accorded to that decision based on the type of alleged error on the part of the trial court. Id. at 510. “[T]he strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused.” Id. at 508 (footnotes omitted). A deadlocked jury, however, is at an extreme other end of the spectrum and is entitled to “great deference.” Id. at 510. In applying a sliding scale of increased deference, it would seem that the trial court’s decision in this matter would not be entitled to the “great deference” afforded to a sua sponte decision to declare a mistrial due to a hung jury, but, rather, to only ordinary deference.
The majority is correct in stating that the record in this case is not sufficiently developed to determine whether evidence of a false allegation at issue was admissible.[17] However, it was the State (and not the defendant) urging the trial court to declare a mistrial in this matter, despite the fact that the case for a false allegation claim had yet to be made. This premature urging by the State would seem to some *424 what blunt the need to grant the degree of deference accorded to the trial court’s decision.
The closest circumstance in Texas case-law to the current matter appears to be Ex parte Bruce, 112 S.W.3d 685 (Tex.App-Fort Worth 2003, pet. dism’d, untimely filed), wherein the defense, during opening arguments, said, “[D.H.] then will be— should be able to remember and will tell you that this summer — and Donna [H.] and Ricky [H.], her parents, will tell you that this summer [D.H.] admitted making a false — .” Id. at 638. The Fort Worth Court of Appeals applied the general rule, for a habeas corpus proceeding, that the applicant bears the burden to show entitlement to relief. Id. at 639. This statement was made purposely and in direct violation of an order prohibiting such statements which had been entered in response to a motion in limine filed by the State.[18] Id. The declaration of a mistrial was made sua sponte in that case, whereas the declaration of a mistrial in this case came only after the repeated requests of the State. The statement made on voir dire by defense counsel in Bruce was given as a statement of fact which the defendant intended to prove, not (as here) as a question posed to a witness. Bruce is also distinguishable from this case because it was a proceeding seeking habeas corpus relief whereas this is a direct appeal. In a habeas corpus proceeding, the applicant bears the burden to show entitlement to relief. Id. In contrast, in a direct appeal (such as this case), once the defendant shows that he is being tried once again for the same offense after a mistrial, it is the burden of the State to show the existence of manifest necessity in the declaration of a mistrial. Hill v. State, 90 S.W.3d 308, 313 (Tex.Crim.App.2002).[19]
A trial court’s decision to declare a mistrial is reviewed for an abuse of discretion, but “the trial court’s discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances.” Garza, 337 S.W.3d at 909. The Texas Court of Criminal Appeals has outlined three situations in which manifest necessity for the declaration of a mistrial arises: (1) “when the particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal,” (2) “when it is simply impossible to continue with trial,” or (3) “when any verdict that the original tribunal might return would automatically be subject to reversal on appeal because of trial error.” Id. The State confines its arguments here to the first situation — whether a fair trial was impossible. The State argues that the defense committed an egregious error that so biased the jury against the State’s case that it prevented the State from receiving a fair trial. The majority is correct in finding that Pierson did not agree with the State’s request for a mistrial. Under this circumstance (i.e., since there is no evidence that Pierson agreed to the mistrial), the duty is on the State to demonstrate the existence of the manifest necessity for the grant of a mistrial. See Harrison v. State, 767 S.W.2d 803, 806 (Tex.Crim.App.1989).
Because it was the State’s burden to prove manifest necessity, it was also the *425 State’s burden to ensure that the record was sufficient to show the question was inadmissible and resulted in extreme prejudice. Unlike the applicant for relief in Bruce, Pierson does not have the burden to prove the trial court’s ruling was incorrect; rather, the State has the burden to prove that the ruling of a manifest necessity for the declaration of a mistrial was correct. The insufficient record prevents the State from meeting this burden. Thus, the State has failed to establish it suffered any unfair prejudice — much less, that sufficiently extreme unfair prejudice existed to constitute manifest necessity.
The State argued to the trial court that manifest necessity is shown by merely demonstrating that some harm has resulted to a party (here, the State). That is not the yardstick by which manifest necessity is measured; it requires an extreme degree of harm so severe that a fair trial cannot occur. In the words of the Texas Court of Criminal Appeals, manifest necessity is “limited to ‘very extraordinary and striking circumstances.’ ” Ex parte Little, 887 S.W.2d 62, 65 (Tex.Crim.App.1994).
Although the trial court is not required to explain its reasoning on the record, its reasoning must be supported by the record. The existence of alternatives is highly relevant. “When a trial judge grants a mistrial despite the availability of a less drastic alternative, there is no manifest necessity and he abuses his discretion.” Hill, 90 S.W.3d at 313. As noted by the United States Supreme Court,
in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.
United States v. Jorn, 400 U.S. 470, 486, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).
The decision by the trial court here falls very close to the line between the exercise of the “trial court’s broad discretion” in finding the manifest necessity to declare a mistrial (see Ex parte Rodriguez, 366 S.W.3d 291, 297 (Tex.App.-Amarillo 2012, pet. ref d)), and the obligation of the trial court to “always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.” Jorn, 400 U.S. at 486, 91 S.Ct. 547. The United States Supreme Court was correct when it uttered the often-repeated statement regarding the declaration of a mistrial that “[t]o be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes....” United States v. Perez, 9 Wheat. 579, 22 U.S. 579, 580, 6 L.Ed. 165 (1824).
It does not appear that the record in this case supports a finding that alternatives less drastic than a declaration of a mistrial did not exist. Manifest necessity requires what does not exist here: extreme error. Although it is true that the State may be prejudiced in some fashion because it may not have a right to appeal an acquittal,[20] such a fact does not mean that just any prejudice justifies a mistrial. The fact remains that other alternatives were available. Texas courts have routinely expressed confidence that an instruction to disregard will cure error associated with *426 an improper question. Simpson v. State, 119 S.W.3d 262, 272 (Tex.Crim.App.2008); Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App.2000) (“In most instances, an instruction to disregard the remarks will cure the error.”); Ovalle v. State, 13 S.W.3d 774, 783 (Tex.Crim.App.2000) (per curiam).
Here, a jury instruction should have sufficiently saved the trial, rendering a mistrial unnecessary. That should have been done. Because it was not done, Pierson has been subjected to prohibited double jeopardy.
I respectfully dissent.

. It does not appear to be picking at straws to observe here that there was no testimony or even a statement that such testimony was expected. There was merely a question.

. In fact, the record is unclear concerning what the prior false allegation was. The attorneys disagreed concerning whether the child claimed to have personally observed the abuse or whether she claimed her cousin had observed Pierson abusing his biological daughter. As stated by the trial judge, "So we don’t even really know what the basis for her statement was.”

. The trial court considered this so egregious that defense counsel was held in contempt and fined; the trial court took the further extraordinary steps of recusing itself and testifying concerning the matter.

. See Ex parte Garza, 337 S.W.3d 903, 909 (Tex.Crim.App.2011) (In a pretrial habeas, "[o]nce the defendant shows he is being tried for the same offense after declaration of a mistrial to which he objected, a heavy burden shifts to the State to justify the trial court’s declaration of the mistrial.”).

. The trial court relied, at least in part, on the reasoning that the State cannot appeal if the trial results in an acquittal.