

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00178-CR

Francisco S. **MORALES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2012CR6358
Honorable Mary D. Román, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  March 11, 2015

AFFIRMED

Francisco S. Morales was convicted by a jury of one count of aggravated sexual assault of a child and five counts of indecency with a child by contact.  The only issue presented on appeal is whether the trial court erred by declaring a mistrial *sua sponte* because manifest necessity did not exist; therefore, Morales's continued prosecution violated the constitutional prohibition on double jeopardy.  Because we hold Morales did not preserve this issue for our review, we overrule his issue and affirm the trial court's judgment.

## BACKGROUND

On March 4, 2014, immediately after a jury was empaneled and sworn in Morales's first trial, one of the jurors informed the trial court that he had airline tickets for a business trip planned to Mexico the following day. The trial court noted that neither the trial court nor the attorneys inquired whether any venireperson had scheduling conflicts that would prevent him or her from attending a four-day trial. In view of the juror's conflict, the trial court explored several possible alternative options.

First, the trial court asked whether the attorneys were willing to proceed with eleven jurors; however, defense counsel objected to proceeding with eleven. The trial court then made efforts to locate the next venireperson who was not struck, but the deputy reported that the venireperson could not be located in the courthouse. Finally, the trial court considered rescheduling the trial to the following week; however, when the jury was presented with this plan, another juror informed the trial court that she would have a scheduling conflict if the trial was moved to the following week. The trial court dismissed the jury after informing them that the deputy would call to instruct them on whether to appear for the trial the following day or whether trial had been rescheduled to the following week.

The trial court and the attorneys then discussed the efforts that would be made to contact the next two veniremembers who were not struck. The attorneys agreed to substitute one of those veniremembers if either could be located.

The following morning, the trial court made the following announcement in open court:

> THE COURT: …. After careful consideration of everything that has happened and the remedies that are available to the Court, what I'm going to do is to declare a mistrial due to manifest necessity, and we are going to start this trial all over again.

We are going to select another jury and hopefully it will go a lot better, as it normally does. And so we are going to dismiss you and so you are basically through with jury service.

The reporter's record then reflects that a recess was taken.

After the recess, the trial court asked the attorneys if they had any problem with selecting another jury that day, but then starting the trial the following Tuesday. At that time, Morales was being represented by two attorneys, a lead defense counsel and a second chair attorney. After the trial court posed the scheduling question, the second chair attorney informed the trial court that lead defense counsel was not present. The trial court then questioned whether the second jury could be selected and hear one day of testimony before trial was recessed until the following Tuesday. The prosecutor informed the trial court that he had told the complainant's family that the trial would not convene until the following week. The prosecutor explained that the complainant's family was experiencing a lot of emotions, and he would prefer to select the jury but to delay the commencement of testimony until the following Tuesday. At that time, having returned to the courtroom during the discussions, lead defense counsel stated on the record she agreed with the prosecutor. The venire panel then entered the courtroom, and both of Morales's attorneys participated in the voir dire and the selection of a second jury. The second jury was selected and the trial court instructed the jury that after checking schedules, trial would commence the following Monday afternoon, March 10, 2014.

On the morning of March 10, 2014, Morales's attorney filed a document entitled "Motion to Dismiss Special Plea of Double Jeopardy." That afternoon, Morales's attorney informed the trial court of the filing, and the following exchange occurred:

> THE COURT: Did you not waive error?
> [DEFENSE COUNSEL]: Your Honor, no, I did not, okay?
> THE COURT: What did you —
> [DEFENSE COUSEL]: The only — when we started, when we had the first one, I agreed — I objected to 11, okay, and then I agreed to get the other one

that was not stricken. I agreed to that. And I waived error on that particular part of getting that other juror that was not — that was not stricken, to get him to complete the 12 people.

So when, Your Honor, when you declared a mistrial, you had 12 people sitting there. It was a complete jury. I didn't — I waived on that particular issue, not anything else, Your Honor. I agreed to bring in the other ones, which they went and got, and I — I— I agreed to waive the error in case — because of that — how they were brought back to court, not on anything else.

Now, according to *Hill v. State*, that, you know, the manifest — when you declare manifest necessity, it is limited to a very ordinary and striking circumstance. And at that time, we had 12 people. I had agreed to allow that to happen and I even agreed to follow the recommendation of the state to say why don't we just wait until next week and wait for the 12th one who said he had tickets to come back from his vacation. I even agreed to that, which ultimately we still had to do anyway, come back this week. But I did not agree — I did not agree or waive error to anything else, Your Honor.

THE COURT: Anything else?

[PROSECUTOR]: No, Judge. I guess I'll just point out that obviously I don't know what the Court's personal rationale was in finding manifest necessity. I'm not even calling that into question, Judge. But what I do recall is when the Court announced its intent to make such ruling, Your Honor asked both parties if they objected to that ruling and both parties answered in the negative.

[DEFENSE COUNSEL]: I do not remember that, Your Honor.

THE COURT: Well, I'll tell you what, the record is the record. And that certainly can be scrutinized by someone else. Your request is denied. It's overruled.

After the jury was sworn, Morales's attorney reurged the motion to dismiss, and the trial court again denied the motion.

## PRESERVATION OF ERROR

Although Morales challenges the trial court's *sua sponte* declaration of a mistrial, arguing no manifest necessity existed, the State asserts Morales failed to preserve his complaint for our review. As the State contends, "preservation of error is a systemic requirement that must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties." *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).

In order for a complaint to successfully be presented for appellate review, the appellate record must establish two things. First, the record must show a complaint was made to the trial

court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a). This request, objection, or motion must state "the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context." *Id*. Second, the record must indicate that the trial court ruled or refused to rule on the request, objection, or motion. *Id*.

In undertaking a double jeopardy analysis, the foregoing general principles governing preservation of error must be considered in the context of "rules [that] have emerged that focus upon whether the defendant has consented to the declaration of a mistrial." *Harrison v. State*, 767 S.W.2d 803, 805 (Tex. Crim. App. 1989). "Where [a] mistrial [is] declared without the consent of the defendant, he or she cannot be retried unless there existed a 'manifest necessity' for the mistrial." *Id*. at 806. When a defendant consents to a mistrial, however, "[r]etrial is generally permitted because the defendant himself has elected to terminate the proceedings and begin anew." *Id*. Stated differently, "[w]hether there existed a manifest necessity to declare a mistrial at [Morales's] first trial is immaterial if [Morales] consented to the trial court's actions." *Id*. Morales's consent "need not be expressed, but may be implied from the totality of circumstances attendant to a declaration of mistrial." *Id*.

In *Ledesma v. State*, 993 S.W.2d 361 (Tex. App.—Fort Worth 1999, pet. ref'd), the Fort Worth court explored the issue of implied consent under circumstances similar to the instant case. In *Ledesma*, the morning after the appellant's case was called to trial and a jury was selected and sworn, one of the jurors informed the trial court he would not be able to serve on the jury. *Id*. at 364. The trial court then asked both sides for suitable less drastic alternatives to a mistrial, but when none were recommended, the trial court declared a mistrial on the ground of manifest necessity. *Id*. When the mistrial was declared, the appellant did not object. *Id*. Although the appellant filed a special plea of double jeopardy when the case was called for trial three months

later, the Fort Worth court held the plea was untimely because the appellant already had impliedly consented to the mistrial. *Id.* at 365 ("When the judge declared a mistrial, Appellant impliedly consented by not objecting.").

In the present case, the trial court went to great lengths to try and remedy the problem when the juror announced his conflict, but ultimately declared a mistrial *sua sponte* on the grounds of manifest necessity. When the mistrial was declared, neither side objected.

Although Morales contends lead defense counsel was not present at the time the mistrial was declared and the first jury was excused, the record does not support this contention. Instead, when the trial judge declared the mistrial on the record, the record first contains the notation "Open court, defendant and jury present," and the only person who spoke during this portion of the record was the trial judge. After the trial judge declared the mistrial and excused the first jury, a recess was immediately taken. It is only after the recess was taken and the trial court began discussing the schedule that the second chair attorney stated on the record that lead defense counsel was not present. Accordingly, the record does not support Morales's contention that lead defense counsel was not present when the mistrial was declared before the recess was taken. In any event, the record is clear that after the mistrial was declared without objection, Morales's attorney actively engaged in the second voir dire, and the special plea asserting the double jeopardy allegation was not filed until five days later.

## CONCLUSION

Because we conclude that by not objecting, Morales impliedly consented to the trial court's *sua sponte* declaration of a mistrial, he has not preserved his double jeopardy complaint for our review. Accordingly, the trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH